# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COLLEEN DREW, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>SHOE SHOW, INC., d/b/a SHOE SHOW and d/b/a SHOE DEPT. and d/b/a BURLINGTON SHOES,<br><br>    Defendant. | No. 10-cv-656-JPG-PMF |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Colleen Drew's motion for conditional collective action certification pursuant to 29 U.S.C. § 216(b) (Doc. 39). Defendant Shoe Show, Inc. has responded to the motion (Doc. 48), and Drew has replied to that response (Doc. 51). The Court also considers Shoe Show Inc.'s motion for oral argument (Doc. 53).

**I. Background**

Drew worked as a store manager for a Shoe Dept. retail shoe store in Wood River, Illinois, from 2007 to February 2010. Shoe Dept. is one of the divisions of defendant Shoe Show Inc.; Shoe Show is the other division. As a store manager, Drew was required to work at least forty-eight hours per week, and often worked more than that. Drew alleges that her primary or significant duties were non-managerial and were of the sort typically performed by hourly workers. For example, she alleges she did not have any responsibility for hiring or firing the employees who worked in her store, was not given access to the information and did not have the authority necessary to develop her store, and was monitored, instructed and supervised by a district manager who was the *de facto* store manager. Nevertheless, Shoe Show Inc. classified

Drew as "exempt" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(1).[1] Consequently, it did not pay Drew at a rate of one and one-half times her normal pay rate for hours worked over forty hours in one week as ordinarily required by 29 U.S.C. § 207(a)(1).[2] Drew believes her classification as exempt was erroneous, was a willful attempt by Shoe Show Inc. to pay her less that the FLSA required and was part of a nationwide company practice. She believes other Shoe Show Inc. store managers in the Shoe Dept. and Shoe Show divisions share her plight.

Drew filed this lawsuit in August 2010 asserting the following claims:

Count I: a claim for failure to pay overtime wages in violation of the FLSA, 29 U.S.C. §§ 207(a)(1) and 215(a)(2);

Count II: a state law claim for money had and received; and

Count III: a state law claim for unjust enrichment.

In the pending motion, Drew asks for conditional collective action certification of Count I under 29 U.S.C. § 216(b) of:

> All current and former salaried Store Managers employed by Shoe Show, Inc., at any time from August 25, 2007 through the present, who were classified by Defendant as "exempt" and not paid overtime compensation for work performed in excess of 40 hours per week.

---

[1] 29 U.S.C. § 213(a)(1) states, in pertinent part, "The provisions of . . . section 207 of this title [overtime pay requirements] shall not apply with respect to – (1) any employee employed in a bona fide executive, administrative, or professional capacity . . . ."

[2] 29 U.S.C. § 207(a)(1) states, in pertinent part,

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

2

Drew points to her own and Shoe Show Inc.'s corporate representative's deposition as well as Shoe Show Inc.'s documents as evidentiary support for her motion. This evidence shows that Shoe Show Inc. classifies as exempt about half of its 1,110 store managers, all of whom are required to work at least forty-eight hours per week. There is also evidence that all store managers share common job duties and restrictions, receive the same training, are governed by the same or similar manuals and have uniform employment contracts. Drew has also testified that she has spoken with other store managers to confirm they are similarly situated to her.

Shoe Show Inc. argues that conditional certification of a collective action is not warranted for several reasons. (1) Shoe Show Inc. store managers are not subject to a common policy, plan or practice, (2) despite a common job description, variation among putative class members would require an individual assessment of particular job duties to determine liability and damages, (3) Drew is not typical of, and therefore not similarly situated to, other store managers, and (4) that Drew has not presented any affidavits from any other similarly situated store manager. Shoe Show Inc. presents evidence of differences in its Shoe Dept. and Shoe Show divisions, the stores within each division, and the management styles of the various district managers that oversee those stores. It also claims it decides who is exempt or non-exempt on a case-by-case basis depending on the store managers' actual duties and the employee-hours they supervise. Shoe Show Inc. has presented declarations from more than a hundred store managers (potential class members) who state that they perform managerial duties for more than half of their working time; many of them listed the specific managerial tasks they perform. Shoe Show Inc. argues that these store managers are not similarly situated to Drew, who rarely performed managerial duties because she shared them with or delegated them to the key holders (those who held keys to the store but who were subordinate to the store manager) in her store or did not need

3

to because of the nature of her store and its low staff turnover. Shoe Show Inc. also questions Drew's personal knowledge of the management of other Shoe Show Inc. stores, especially those outside her management district or in the Shoe Show division.

Drew contends that the consideration of the merits urged by Shoe Show Inc. is premature. She also asks the Court to disregard the declarations submitted by Shoe Show Inc. because they were not produced in discovery and it is unclear under what circumstances they were gathered.

**II.      Analysis**

As noted above, Drew alleges in Count I a claim for failure to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 207(a)(1) based on a misclassification of store managers as "exempt" from that provision under 29 U.S.C. § 213(a)(1). The FLSA provides that an action to recover liability for unpaid overtime compensation "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In order to be included in an action brought on behalf of a group of similarly situated employees, a claimant must affirmatively opt into the action. *Id.* A collective action allows FLSA plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (age discrimination case implementing FLSA enforcement mechanism).

Courts have developed a two-step process to implement a plaintiff's right under § 216(b) to bring an action on behalf of others similarly situated to her. *See, e.g., Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *2 (N.D. Ill. Dec. 23, 2010) (citing *Russell v. Illinois*

4

*Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008)). At the first step, sometimes called the notice stage, a plaintiff is required to show that there are "similarly situated employees who are potential claimants." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). The plaintiff can do this by making a "modest factual showing" that he and other potential plaintiffs were victims of a common unlawful policy or plan. *Id.* (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, *4 (N.D. Ill. Dec. 22, 2005). At this stage, the Court does not resolve factual disputes, decide substantive issues going to the merits or make credibility determinations. *Marshall v. Amsted Indus., Inc.*, No. 10-cv-11-MJR-CJP, 2010 WL 2404340, * 5 (S.D. Ill. June 16, 2010). If the plaintiff succeeds at the notice stage, the Court will conditionally certify the collective action and will authorize notice of the action to potential plaintiffs who may want to join. *Smallwood*, 710 F. Supp. 2d at 750. The standard at the notice stage is lenient, *Russell*, 575 F. Supp. 2d at 933, and courts have broad discretion to implement the notice provisions of § 216(b), *Hoffmann-La Roche*, 493 U.S. at 169.

The second step occurs after the opt-in period and further discovery. There, at a defendant's request, the Court asks "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Smallwood*, 710 F. Supp. 2d at 750 (internal quotations omitted). If there is not sufficient similarity, the Court may reconsider its decision to allow the case to proceed as a collective action and dismiss the opt-in plaintiffs' claims without prejudice. *Russell*, 575 F. Supp. 2d at 933; *Marshall*, 2010 WL 2404340 at * 5.

As noted above, to support her application for conditional collective action certification

at the notice stage of the two-step process, Drew points to common corporate policies and job descriptions that she believes apply to all Shoe Show Inc. store managers in both the Shoe Dept. and Shoe Show divisions. Her beliefs about store manager duties other than those at her own store are based on her limited experience at two or three other Shoe Dept. stores and on several conversations she had with other store managers but which she cannot recollect with any degree of specificity. Shoe Show Inc. does not contest the existence of common corporate policies such as, for example, similar store manuals that include a list of responsibilities for which all store managers are accountable, but argues that there is sufficient leeway within any common policies for the proper classification of store managers, on a case-by-case basis, as exempt or non-exempt.

In order to warrant notice to other potential class members, Drew must make a modest factual showing that other exempt store managers in Shoe Show Inc. stores are similarly situated to her in that they performed the same or similar type of job duties relevant to the exempt classification and that they are victims of a common unlawful policy or plan to misclassify them as exempt. She has pointed to the store manuals for Shoe Show Inc.'s two business divisions that show all store managers are responsible for accomplishing or delegating many of the same core functions. However, there is no evidence that, beyond responsibility for those core functions, all store managers perform similar activities for the same percentage of work time such that they are similarly situated with respect to the question of whether they are properly categorized as exempt under the FLSA, 29 U.S.C. § 213(a)(1). In fact, Shoe Show Inc.'s corporate representative testified that "there is a good deal of difference in the duties even within

the exempt group" of store managers. Manning dep. at 75.[3]

Drew's contradictory assertions that all Shoe Show Inc. store managers perform the same duties is not based on sufficient personal knowledge to warrant even a threshold finding that all store managers are similarly situated. The basis for Drew's knowledge of the duties performed by other exempt Shoe Show Inc. store managers comes in part from her brief experiences in a handful of other Shoe Show Inc. stores for very limited periods of time, and her vague recollections of conversations with other Shoe Show Inc. managers where she admits that she did not discuss issues pertinent to this case, that she only talked about staffing issues, or that other managers agreed generally that "everything [had] to be done by corporate or the district manager," Drew dep. at 176. Another basis for her knowledge of other store manager duties is hearsay from a Shoe Show Inc. employee who traveled to Shoe Show Inc. stores to perform inventories and appears to have had no role in store management. She also relies on general statements from her district manager that the Shoe Dept. and Shoe Show divisions had basically the same job positions and were run basically the same way. These are not reliable foundations for Drew's personal knowledge of the duties other exempt Shoe Show Inc. store managers performed. Drew's ignorance about other store managers is also demonstrated by her lack of awareness that some Shoe Show Inc. store managers were non-exempt and received overtime.

For these reasons, the Court finds that Drew has not made the modest factual showing of

---

[3]As a matter of precaution, the Court has not considered the declarations submitted by Shoe Show Inc. from certain store managers. Shoe Show Inc.'s status as employer of the declarants raises questions about potential coercion of the declarants, especially in light of the fact that the declarations were not produced in discovery such that Drew could investigate the circumstances of their collection. *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227-28 (S.D. Ala. 2008). However, because it has not considered the declaration, the Court need not address the issue of whether their collection was proper.

similarity between store managers that would justify conditional collective action certification. She may proceed in this case only as an individual plaintiff.

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Drew's motion for conditional collective action certification (Doc. 39) and **DENIES** Shoe Show Inc.'s motion for oral argument (Doc. 53).

**IT IS SO ORDERED.**
**Dated: September 19, 2011**

                 s/ J. Phil Gilbert
                 **U.S. District Court Judge**